Case 1:97-cv-00072   Document 84   Filed in TXSD on 03/09/2001   Page 1 of 15

*84*

U.S. COURT OF APPEALS
**FILED**

FEB 1 2 2001

CHARLES R. FULBRUGE III
CLERK

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 00-40255

B-97-CV-72

UNITED STATES FIRE INSURANCE COMPANY,

Plaintiff-Appellee,

United States District Court
Southern District of Texas
FILED

MAR 0 9 2001

Michael N. Milby
Clerk of Court

VERSUS

ALBERT VILLEGAS, doing business as
Law Offices of Albert Villegas,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES and DeMOSS, Circuit Judges, and BARZILAY*, District Judge.

DeMOSS, Circuit Judge:

    Attorney Albert Villegas ("Villegas") appeals from the final judgment entered by the district court which granted judgment in favor of United States Fire Insurance Company ("USF") on a conversion claim arising from Villegas's negotiation of a settlement that was in contravention of USF's subrogation rights.

_____

    * Judge, U.S. Court of International Trade, sitting by designation.

For the reasons discussed below, we AFFIRM the judgment of the district court.

## I.

The underlying claim giving rise to this indemnification dispute was an on-the-job injury suffered by Villegas's client, Ruben Perez.  Pursuant to a worker's compensation policy with Perez's employer, USF paid medical expenses and made indemnity payments to Perez in the total sum of $71,872.20.  Villegas later filed a third-party complaint on behalf of Perez and his family. On August 3, 1994, USF notified Villegas of its subrogation rights and lien on any benefits which might have been recovered in the third-party claim.  That action was ultimately settled at mediation for a total of $150,000.

Five days prior to the mediation conference, Villegas represented to the state court hearing the "friendly" third-party action, that the worker's compensation carrier had a statutory right to the first of the settlement proceeds and that he was obligated to protect the worker's compensation lien.  He further represented to the court that he represented the lienholder.  At the mediation on September 6, 1995, Villegas entered into a settlement agreement under which $30,000 was to be awarded Perez, USF's parent company, and Villegas, and $120,000 was awarded to Villegas and Perez family members.  USF did not attend the mediation conference relying instead on Villegas's statutory duty

2

CutePDF - www.faxina.com

to protect its $71,872.20 lien.  In October 1995, Villegas tried to cash the $30,000 check to make a distribution to USF's parent company, Villegas, and Perez, but an agent of the parent company took the check and locked it in her drawer.  The check was given to Arnold Aguilar, USF's attorney, in December 1995, and it remained in his possession until April 1997 when Villegas demanded that it be placed in the registry of the court.

On April 7, 1997, USF filed suit against Villegas asserting that his actions constituted conversion and demanding actual damages for the full amount of the lien as well as for punitive damages and attorney's fees.  Specifically, USF claimed that Villegas destroyed, and effectively converted, its right to reimbursement for $36,263.65 in indemnity benefits and $35,608.55 in medical payments (a combined figure of $71,872.20).  As a result of the settlement awarding only $30,000 to Perez and USF's parent as opposed to the full $150,000, USF was unable to recover the total amount of benefits which it had paid.  The settlement also precluded USF's ability to receive a credit towards any future medical payments up to the settlement total of $150,000.

In his own testimony, Villegas conceded that he was aware of the amount of USF's lien and the fact that he had a duty to protect that lien.  He also conceded that if one accepts and benefits from a portion of a third-party settlement with actual notice that the funds are subject to a worker's compensation carrier's subrogation

3

CMPDF - www.fesia.com

right, one does so wrongfully and is subject to a cause of action for conversion.

In response to USF's complaint, Villegas filed a motion to dismiss for lack of jurisdiction because the amount in controversy did not exceed the $75,000 requirement for diversity cases.  He contended that USF's actual damages amounted only to $71,872.20. A magistrate judge recommended that the motion to dismiss be denied because on the face of its complaint, USF also sought punitive damages against Villegas for his actions.  Villegas contended that punitive damages could only be recovered upon a showing of malice, and because malice requires a finding that his actions would have resulted in the financial ruin of USF, no punitive damages could ever be recovered by the fully solvent USF, and thus the only form of available damages, compensatory, were insufficient to establish jurisdiction.  In its order accepting the magistrate judge's report and recommendation and denying Villegas's motion to dismiss, the district court noted that Villegas's motion relied on USF's claim for malice at trial, but that it ignored evidence in the pretrial record showing that the conversion alleged in the complaint was perpetrated by fraud in that Villegas falsely represented to the state court in the "friendly" proceeding that he represented USF. The district court found clear evidence that Villegas completely failed to properly communicate with USF regarding settlement beforehand,  and  that  he  falsely  portrayed  himself  as  a

4

representative of USF, and that as a result of this misrepresentation, he was able to settle the claim in a manner adverse to USF's interests.   The district court concluded that jurisdiction was proper because USF's valid punitive damages claim, if established and coupled with the alleged actual damages, would satisfy the $75,000 amount in controversy requirement.

The parties agreed that the district court needed to first make a legal determination as to whether the settlement agreement would be res judicata against USF's conversion claim.  The parties further agreed that if the settlement did not constitute res judicata, Villegas would then be liable for conversion as a matter of law.  The district court received argument from both sides and then concluded, as a matter of law, that Villegas converted the medical and indemnity payments made by USF to Perez by not making certain that USF's lien was protected through first monies payment to USF, and that Villegas benefitted from the proceeds of the settlement.  The district court went on to hold that Villegas also converted some portion of the remaining $78,127.80, that portion being an amount which a jury would decide should have been awarded to Perez instead of the four other family members.  This issue was litigated by the parties so that USF could receive a credit for any future medical payments it may have to make to Mr. Perez.  But the district court declined to submit the issue to the jury, and USF has waived its challenge to this issue on appeal.  The district

5

CMPDF - www.testsv.com

court did ask the jury to decide whether USF was entitled to punitive damages on the basis that Villegas acted with malice. On this issue, the jury returned with a verdict denying USF any punitive damages.

The district court then considered Villegas's waiver of any entitlement to the original $30,000 settlement funds, in addition to approximately $800 interest on those funds. After deducting expenses, the district court found that the remaining portion of the original $71,872.20 in damages converted by Villegas was $29,405.07. Final judgment in that amount plus $5,997.83 in prejudgment interest was entered in favor of USF. Villegas has timely appealed.

II.

In Villegas's first point on appeal, he argues that the district court never had jurisdiction over this case to begin with because the amount in controversy never exceeded the $75,000 threshold found in 28 U.S.C. § 1332(a)(1). We review the district court's determination as to jurisdiction *de novo*. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252 (5th Cir. 1998). The district court's factual determinations made in the process of determining jurisdiction are reviewed for clear error. *See Harvey Construction Co. v. Robertson-Ceco Corp.*, 10 F.3d 300, 303 (5th Cir. 1994).

The jurisdictional issue presented in this appeal is quite

6

simple: was USF's claim for punitive damages sufficient to bring its claim for $71,872.20 in actual damages over the $75,000 threshold for federal diversity jurisdiction. It is undisputed that actual damages claimed for medical and indemnity payments already made by USF totaled $71,872.20. What is in dispute is the value, if any, of USF's remaining claims for which it ultimately received no relief.

USF contends that in addition to its actual damages, its complaint asserted a claim for the present value, in the form of a credit, of any future medical expenses it might have to pay Mr. Perez, as well as for those additional punitive damages to which it alleges it is entitled as a result of Villegas's fraudulent activities. And despite Villegas's protestation that USF did not present its fraud claim to the jury and that the jury did not find malice, USF properly notes that neither of these facts prevents those claims from being used to satisfy the amount in controversy requirement for federal diversity jurisdiction.

As the Supreme Court has made clear, where it appears to a legal certainty that a plaintiff's claim is truly for an amount below the jurisdictional amount required to confer federal jurisdiction, dismissal may be justified. In making that determination the district court may look, not only to the face of the complaint, but to the proofs offered by the parties. *See St. Paul Mercury Indemnity v. Red Cab Co.*, 58 S. Ct. 586, 590 (1938);

*see also Greenberg*, 134 F.3d at 1253.

Villegas notes that the applicable Texas statute governing the reimbursement of worker's compensation benefits from third-party settlements requires that the lien be reduced by a proportionate share of litigation expenses, as was done in this case. Villegas contends that after reducing for expenses, USF only pleaded actual damages in an amount approximating $60,000. Villegas next contends that to get over the $75,000 hurdle, USF added a claim for punitive damages, upon which it would never have been able to recover, simply to get into federal court.

Villegas overlooks two important points regarding the amount in controversy. First, USF pleaded and proved that the settlement negotiated by Villegas would preclude any credit in its favor for future medical payments. Those payments would be above and beyond the $71,872.20 already paid. Thus, USF was indeed justifiably seeking recovery in excess of $75,000, when the value of the lost credit for future payments is considered. While the district court denied the jury the opportunity to apportion the remaining amount of the settlement up to $150,000 because Mr. Perez was not a party to the suit before it, we are nonetheless justified in considering this category of damages when determining whether the amount in controversy was sufficient to support federal court jurisdiction. *See Greenberg*, 134 F.3d at 1253.

Likewise, Villegas overlooks USF's claim for punitive damages.

As noted above, Villegas claims that no punitive damages were recoverable. But a closer look reveals that USF's assertion of the claim for punitive damages was legitimate in light of Villegas's behavior. The jury's failure to award such damages, however, does not preclude our reliance upon such potential damages to establish the threshold amount in controversy. *See Greenberg*, 134 F.3d at 1253-54 ("[J]urisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached.") Texas law permits recovery of exemplary or punitive damages upon a showing of fraud or malice. *See* Tex. Civ. Prac. & Rem. Code § 41.003(a). As is discussed above, USF claimed in its complaint that Villegas acted with malice. Additionally, the evidence presented established that Villegas knowingly misrepresented himself as a representative of USF to the state court, and he profited from such representation, that is to say, his misrepresentation inured to his benefit and to USF's detriment. Clearly a fact issue existed as to Villegas's malicious or fraudulent actions sufficient to sustain and support a claim for punitive damages under Texas law. Indeed, the jury was properly given the issue of punitive damages for its resolution of the factual issues related thereto. *See id.* at 1253 ("the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy").

Villegas's claim that malice can only be established if the

9

plaintiff establishes that the charged malicious conduct threatened USF with financial ruin is a strained interpretation of the Texas Supreme Court's decision in *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex. 1994) at best.   In *Moriel,* the court, in stating that a plaintiff must establish "extraordinary harm" and in using examples of death, physical injury, or financial ruin, established a standard for delineating between ordinary negligence and gross negligence by an insurance company against an individual. Indeed, as USF properly notes, Villegas's strained interpretation, if accepted, would lead to a rule that he should be allowed to violate a statute, convert funds to his own use with full knowledge that his actions are contrary to law, and completely eliminate USF's ability to satisfy its lien, just because USF can afford to absorb the loss.   Such a result would be absurd and we decline to extend *Moriel* in the manner suggested by Villegas.

We also note that USF had a colorable claim for punitive damages based upon Villegas's admitted fraudulent acts, and that USF requested a jury instruction to that effect.   Under the facts of this case, to suggest that USF was not justified in adding a claim for punitive damages for behavior which Villegas himself admits was suspect, is disingenuous.   USF had a good faith basis for proceeding with its claim for punitive damages, and Villegas has failed to show that USF would, under no circumstances, have ever been able to recover for punitive damages.   Indeed, we

10

conclude that, had the jury found in favor of USF on its punitive damages claim, such a finding would most certainly have been supported by the record of this case.

Accordingly, we conclude that though USF's actual damages tallied less than $75,000, it asserted in good faith additional claims which when combined with the actual damages, permitted the district court to accept federal diversity jurisdiction over USF's conversion claims.

### III.

Villegas argues in the alternative that the district court erred in holding that, as a matter of law, he had converted USF funds. We review *de novo* the district court's award of judgment as a matter of law pursuant to Rule 50(a)(1), and we evaluate the evidence in the light most favorable to the non-moving party. *See Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 336 (5th Cir. 1999).

Villegas contends that there is a conflict in the evidence as to whether USF suffered a loss. He contends that under Texas law, a conversion action is one for the wrongful exercise of dominion and control over the personal property of another, and that only the person whose rights were interfered with has a cause of action. *See Lone Star Beer, Inc. v. Republic Nat. Bank of Dallas*, 508 S.W.2d 686 (Tex.Civ.App.–Dallas 1974, no writ). According to Villegas, the disputed money in this case belonged, not to USF, but

11

to the Texas Worker's Compensation Insurance Facility ("the Facility") for whom USF operated as a servicing company. According to Villegas, Texas law clearly states that an entity functioning as a conduit for money does not have a conversion cause of action. *See Groves v. Hanks*, 546 S.W.2d 638 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.). Villegas argues that the evidence in this case established only that the Facility was entitled to the funds and that USF was merely passing money through to another party.

Villegas fails to acknowledge that the very case he cites also states that a conversion plaintiff need only prove "that it is the owner of the property converted *or that it had legal possession of the property so taken or that it is entitled to possession.*" *Lone Star Beer*, 508 S.W.2d at 687 (emphasis supplied). As the testimony revealed, when an employee is injured and files a claim through his employer, the employer files a claim with the servicing carrier (in this case USF), and the carrier pays the benefits. USF payed benefits directly to Mr. Perez and USF was later to be reimbursed by the Facility. Notwithstanding a separate arrangement with the Facility regarding indemnification, the evidence clearly established that all funds paid to Mr. Perez and converted by Villegas belonged to USF. As USF notes, the *Groves* case would only be applicable to this case if the Facility was seeking funds from USF. Here, the only relevant issue is whether Villegas converted

12

funds from USF, and the issue of who ultimately should recover those funds is between USF and the Facility, not USF and Villegas. We therefore conclude that the district court did not err in concluding that Villegas converted funds which belonged to USF, irrespective of the relationship between USF and the Facility, and no reversible error has been shown.

IV.

Finally, Villegas contends that the district court erred in holding that USF's actual damages totaled $29,405.07. Here, Villegas argues that the insurance carrier is not entitled to any reimbursement for a settlement to the beneficiary's spouse or children. He contends that a trier of fact should have apportioned the value of each of the claims of the beneficiary, his spouse, and each of the children. Without such an accounting, Villegas contends that the district court could not determine what amount he converted.

Villegas overlooks the fact that this is a conversion action between himself and USF and that USF was not a party to the underlying lawsuit resulting in the settlement. USF correctly notes that as a worker's compensation carrier, it is entitled to recoupment of its claims first to the extent of all compensation paid out. *See Watson v. Glenn Falls Ins. Co.*, 505 S.W.2d 793, 795 (Tex. 1974). Under Texas law, a trial court has no authority to apportion settlement funds between an injured's estate, spouse, or

13

CHiPDF - www.fasisi.com

children, without first giving effect to the wording of the Worker's Compensation Act by first reimbursing the carrier. *See Performance Ins. Co. v. Frans*, 902 S.W.2d 582, 585 (Tex.App.–Houston [1st Dist.] 1995, writ denied). And Villegas himself agrees that, under Texas law, a carrier is not required to intervene in a third-party action in order to enforce its rights to subrogation, and that any agreement reached between beneficiaries and non-beneficiaries is not binding with respect to the recovery of a workers compensation carrier's subrogation claim.

We conclude that the district court did not err by refusing to allow the jury to reapportion the settlement funds due to Perez and his family members. USF is entitled to have its expenses reimbursed first, before any benefits are paid to any beneficiary, spouse, or child. Villegas has repeatedly acknowledged by his own testimony that all of the elements for conversion have been satisfied, and he presents no winning argument that the district court should permit a new accounting of the settlement since, irrespective of a reapportionment, USF is entitled to first proceeds from the settlement, before any individual beneficiary or relative receives their apportioned interest.

## V.

Based upon the foregoing, we find that no reversible error was committed by the district court. Accordingly, we AFFIRM in all respects the judgment entered by the district court.

14

**AFFIRMED.**

**15**

CVisPDF - www.fastio.com